**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

DARRELL SADDORIS,

      Plaintiff,

v.            CIVIL ACTION NO.   2:20-cv-00646

KANAWHA RIVER RAILROAD, L.L.C., and
NORFOLK SOUTHERN RAILWAY COMPANY,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants' Renewed Motion for Summary Judgment* (Document 36), the previously filed *Defendants' Motion for Summary Judgment* (Document 19), the *Defendants' Memorandum in Support of Motion for Summary Judgment* (Document 20), the *Plaintiff's Response to Defendants' Motion for Summary Judgment* (Document 41), the *Defendants' Reply Memorandum in Support of Motion for Summary Judgment* (Document 42), and all attached exhibits.[1] For the reasons stated herein, the Court finds that the Defendants' motion should be denied as to Counts I and III and granted as to Count II to the extent it raises an independent cause of action.

**FACTS**

The Plaintiff, Darrell Saddoris, is a 60-year-old factory worker from the west side of Charleston, West Virginia.  To get to his job at the Gestamp plant in South Charleston, West

---

1 The Court notes that there are numerous pending motions in limine. The Court does not explicitly resolve them in this memorandum opinion and order, but considers them, where relevant, to the determination of whether the Defendants are entitled to summary judgment.

Virginia, he regularly rode a bike to catch a bus to take him the remainder of the route.   As part of this commute, he rode the bike along railroad tracks and adjacent walkway, as a shortcut to the bus stop, cutting approximately 15-20 minutes from his commute. On February 14, 2019, Mr. Saddoris fell off the walkway and landed in the stream below, sustaining significant and permanent injuries which left him hospitalized for an extended period.   He brought this action to recover for those injuries.

Defendant Norfolk Southern Railway Company ("Norfolk") owns the railroad right of way and track that Mr. Saddoris would cross.   Pursuant to a July 29, 2016 Lease Agreement, in effect at all relevant times, Norfolk leased the right of way and track system to Defendant Kanawha River Railroad, L.L.C. ("KRR"). The lease provided that "LESSEE shall be responsible for all maintenance of the Line, including but not limited to track and bridges, signals, hot box detectors and other detectors, AEI scanners, greasers and other equipment affixed to the Line." (Document 41-5.)

The right of way and track system include the area crossing Patrick Street and extending behind the Todd Judy Ford in Charleston, West Virginia.   It also includes an area where two railroad bridges cross approximately 20-30 feet above a stream.   At the stream crossing, there is a trestle built which supports both tracks and a separate walkway, which the Defendants refer to as an access platform, consisting of grating held in place by spikes.[2]   A gap of approximately 24-inches exists between the tracks and the walkway.   Along the walkway were posts, with two sets of holes from which a chain, cable, or some other railing could be hung to aid in preventing

_____

2 For purposes of clarity and consistency, and because factual inferences are to be viewed in the light most favorable to the nonmoving party, the Court will utilize the preferred terminology of the Plaintiff, referring to the relevant area as a walkway, throughout the rest of the opinion.

pedestrian falls.   On the day of Mr. Saddoris' fall, no chain, rope, or other railing was in place between the posts.   Defendant KRR maintains that the walkway was out of service, that it was never used by KRR, and that "there is no entity or party responsible for inspection, maintenance or repair of the access platform." (Document 41-6)   However, at the time of Mr. Saddoris' injury, he contends that no "out of service" or "no trespassing" signs were displayed.[3] *Id.*

KRR and Norfolk have both argued that they had no duty to maintain the "out of service" platform area.   KRR's general manager, Derrick Johnson, stated that while he had never seen any documentation that the area was out of service, he believed it to be out of service based on hearsay from conversations with other employees.   He further contended that Norfolk had labeled it out of service prior to KRR leasing it.   Mr. Johnson noted that KRR tried to post no-trespassing signs, although he had never personally seen them, but that the signs were routinely torn down so they would attempt to replace them when they could.

Prior to and after Mr. Saddoris' fall, Scotty Higginbotham, a track inspector for KRR from 2016 to August 2019, inspected the relevant section of the track on a weekly basis.   Before that, from 2010 to 2016, he was a track inspector with Norfolk at the same location and inspected the track twice daily.   Through his inspections, he was aware of the posts with holes for safety railings.   Mr. Higginbotham stated at times a cable was strung through the posts but at other times it was not.   He reported the missing fall protection cables to his supervisors at both KRR and

---

3 The Plaintiff attempts to utilize subsequent modifications made by the Defendant to the relevant area.   The Defendants have moved separately to exclude this evidence under Federal Rule of Evidence Rule 407. (Document 39).   While the Court will issue a separate order detailing its ruling on the pending motion, the Court notes that this type of evidence is plainly inadmissible under Rule 407.   Despite the Plaintiff's contentions that this evidence serves the purpose of impeachment, the Defendants' have made no contention that they were unable to put additional safety measures in place, or that they were not in control of the relevant areas.   Rather, the Defendants simply argue that they had no legal duty to do so.   This evidence does not impact the analysis of whether the legal duty existed, and therefore is not relevant to impeach on that issue.   Accordingly, the evidence cannot be properly considered.

3

Norfolk on multiple occasions.   Mr. Higginbotham believed that it was a railroad rule to have the cables in place and reported the missing cables because he believed it was a safety hazard.

At approximately 9:00 p.m., on February 14, 2019, Mr. Saddoris utilized the railroad right of way as he did once or twice per day.   After taking approximately one or two steps, he tripped and fell approximately 20-30 feet to the ground on the banks of the stream.   As a result of the fall, Mr. Saddoris suffered a right pubic ramus fracture, fracture of multiple ribs, and a right bicep tendon rupture.   After spending significant time in the hospital, Mr. Saddoris returned to the scene, and noticed one of the spikes slightly raised in a manner that could have posed a tripping hazard.   While Mr. Saddoris is unsure what precisely caused him to trip and fall, he concludes that there is a reasonable chance it was the raised spike that was not flush with the grating.

Prior to the incident, Mr. Saddoris had utilized the railroad bridge both during the day and at night.   He acknowledged that he had crossed it at least 25 times in daylight before the fall.   On the night of the incident, Mr. Saddoris noted that it was beginning to get dark, but he still was able to see.   He also conceded that on the night of the injury he was aware that there was no safety railing, ropes or chains between the posts, and that the metal grating was secured by railroad spikes.

On June 22, 2020, Mr. Saddoris brought a three-count complaint against the Defendants in the Circuit Court of Kanawha County, West Virginia. In the complaint, he alleges that the Defendants are liable because: (1) the Defendants' failure to properly maintain the walkway and railroad constituted negligent, and/or willful, wanton, and reckless conduct; (2) the Defendants breached a purported special duty of railroad operators in areas where the public is present; and (3) the Defendants breached their duty under the Restatement regarding the care of dangerous conditions on property.   On September 25, 2020, the Defendants filed a Notice of Removal and

4

removed the case to this Court.   On August 13, 2021, the Defendants moved for summary judgment.   After an amended scheduling order was issued on August 25, 2021, the parties sought mediation which was unsuccessful.   On January 28, 2022, the Defendants renewed their motion for summary judgment.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could affect the outcome of the case.   *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.   *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.   *Hoschar*, 739 F.3d at 169.   However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in

his favor." *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).   If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.   If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The Defendants argue they are entitled to summary judgment because no genuine dispute of material fact exists, and the Plaintiff has failed to establish that the Defendants breached any duty to him.   The Plaintiff counters that the failure to ensure proper safety measures on the railroad crossing when the Defendants were aware that pedestrians utilized it constituted willful, wanton, and/or reckless conduct, such that the defendants could be liable to an injured trespasser.   Further, he argues that they are also liable because the crossing with raised nails and no safety railing was

6

a hazardous condition known to the Defendants but concealed from known trespassers, and the Defendants failed to warn trespassers.   Because genuine disputes remain as to whether the Defendants' failure to maintain proper safety railings or other safety measures constituted willful, wanton, and/or reckless conduct, and as to whether the dangerous condition was open and obvious, the Court finds that summary judgment is not appropriate on either issue.

### A. Willful, Wanton, and Reckless Conduct

In Count I, the Plaintiff argues that the Defendants negligently failed to ensure that the railroads were maintained in a safe manner, and alternatively that the Defendants willfully and/or wantonly caused his injuries through their conduct.   The Defendants counter that they owed no legal duty to the Plaintiff.   However, if they did, they argue that because Mr. Saddoris was a trespasser, they owed him no duty of care aside from the duty to refrain from willfully or wantonly causing his injuries. They argue that nothing in their conduct supports a finding that they acted willfully or wantonly and, therefore, they are entitled to summary judgment on that claim.

Generally, to recover in a suit for negligence, a plaintiff must show by a preponderance of the evidence, that (1) the defendant owed the plaintiff a duty, (2) the defendant negligently breached that duty, and (3) that the breach proximately caused the plaintiff's injuries. *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W.Va. 2016) (citations omitted). Thus, a critical inquiry is what, if any, duty the Defendants owed to the plaintiff.

In a premises liability action, such as this, the duty owed to an individual depends upon their status on the land, with lawfully present guests typically owed a higher duty than trespassers. In West Virginia, a trespasser, is an individual "who goes upon the property of another without invitation, express or implied, and does so out of curiosity, or for his own purpose or convenience,

and not in the performance of any duty to the owner." Syl. Pt. 1, *Huffman v. Appalachian Power Co.*, 415 S.E.2d 145 (W. Va. 1991).

West Virginia law recognizes a limited duty owed to trespassers.   A possessor of land is liable to a trespasser for willful, wanton, or reckless misconduct. W.Va. Code § 55-7-27; *Huffman*, 415 S.E.2d at 148-49.   Thus, to be liable, the possessor must do more than merely fail to act with ordinary care.   *Id.* at Syl. Pt. 2.   The West Virginia Supreme Court of Appeals has specifically extended this principle to individuals utilizing railroad property in a manner similar to Mr. Saddoris.   The court held that when a person, who is not employed by the railway company, uses railroad tracks as a walkway not at a public crossing, the "railway company owes to him no higher duty than it owes to a trespasser." *Craighead v. Norfolk & W. Ry. Co.*, 475 S.E.2d 363, 369 (W. Va. 1996).   Mr. Saddoris was walking on a private railroad without permission or invitation. While it was common for him and others to do so, the commonality did not change the legal status. Under West Virginia law, when Mr. Saddoris was walking on the railroad and walkway, he was acting as a trespasser, and the Defendants owed Mr. Saddoris the duty to avoid willful or wanton conduct leading to his injury.[4]

Willful or wanton misconduct relates to the actual or constructive purpose or design of the action.   *Yourtee v. Hubbard*, 474 S.E.2d 613, 620 (W. Va. 1996) (quoting *Stone v. Rudolph*, 32 S.E.2d 742, 749 (W. Va. 1944)).   To establish this, it must be shown that the defendant "was

---

4 To support the complaint, the Plaintiff has offered the report of Mr. Frank Burg seemingly to expand the potential breach of duties at play.   The Defendants have filed a motion to exclude the testimony of Mr. Burg under *Daubert*. (Document 38).   While the Court does not resolve the pending motion in this opinion, the Court notes that the proffered testimony and report regarding obligations under OSHA and other statutes do not impact the determination of whether a genuine issue of material fact exists.   Further, to the extent an expert seeks to articulate and explain various statutory or other legal obligations, that is the province of the Court.   Therefore, weighing the report, which the Court cannot do at this juncture, is not necessary toward the determination of whether the Defendants are entitled to summary judgment.

conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result." *Id.*

The West Virginia Supreme Court has repeatedly held that questions of negligence, due care, proximate cause, and concurrent negligence are jury questions when the evidence is either in dispute, or when the undisputed facts could lead to different reasonable conclusions. *Birdsell v. Monongahela Power Co.*, 382 S.E.2d 60, 62 (W. Va. 1989) (collecting cases). These are precisely the questions that remain. While proof of willfulness is an exceptionally tough burden for the Plaintiff to bear, whether he ultimately carries it or not is an issue that must be left for the jury.

There are sufficient facts from which a reasonable jury *could* find that the Defendants willfully or wantonly failed to prevent the injuries. Given the testimony of Mr. Higginbotham, the track inspector, and Mr. Johnson, KRR's general manager, there is evidence to support findings that the Defendants knew that the railing was routinely missing, and that a fall from such a height could lead to serious injury or death. Giving the Plaintiff the benefit of all reasonable inferences, they had reason to know that pedestrians routinely walked across this area and, further, they had put safety measures in place on multiple occasions before Mr. Higginbottom reported that the chains were missing. Therefore, without weighing the evidence, the Court concludes that there is evidence from which a reasonable jury could find that the Defendants understood the significant risk, knew the proper way to mitigate that risk, and intentionally chose not to put a permanent solution in place. Under proper instructions from the Court, given the status of the evidence, a jury *could* find the Defendants' failure to act exhibited reckless disregard to the likelihood that one

of the many trespassers crossing the walkway daily could fall and be injured. Accordingly, genuine issues of material fact exist regarding whether the Defendants' conduct was willful and/or wanton.

### B. Open and Obvious

In Count III, the Plaintiff alleges that even if the Defendants' conduct was not willful, wanton, and or reckless, they are still liable under the Restatement for failing to exercise reasonable care to warn known trespassers about a dangerous condition that was not open and obvious. The Defendants dispute whether they had knowledge of trespassers utilizing the walkway or knowledge that a dangerous condition existed. However, they argue that even if those facts were established, they are not liable because the lack of railings and the danger of crossing a railroad suspended above a stream constitute an open and obvious condition to any trespasser.

A landowner, who might otherwise not be liable to injuries sustained by a trespasser, may still be liable if the landowner maintains a highly dangerous condition or instrumentality upon the property, and other conditions are met. In *Huffman v. Applachian Power Co.*, the West Virginia Supreme Court of Appeals established a four-prong test outlining the specific conditions necessary for this path to liability. The Court adopted the general principles of the Restatement (Second) of Torts §355 and stated:

> "[F]or a trespasser to establish liability against the possessor of property who has created or maintains a highly dangerous condition or instrumentality upon the property, the following conditions must be met: (1) the possessor must know or, from facts within his knowledge should know, that trespassers constantly intrude in the area where the dangerous condition is located; (2) the possessor must be aware that the condition is likely to cause serious bodily injury or death to such trespassers; (3) the condition must be such that the possessor has reason to believe trespassers will not discover

it; and (4), in that event, the possessor must have failed to exercise
reasonable care to adequately warn the trespassers of the condition."

*Huffman*, 415 S.E.2d at 151–52. Giving the Plaintiff the benefit of reasonable inferences, and giving consideration to the witnesses' testimony cited above, the first and second prongs of the rule are met. A genuine dispute remains as to whether the third element is met, and resolution is ultimately a question for the jury. Thus, summary judgment is inappropriate on the question of liability under *Huffman*.

First, in determining whether a condition is dangerous for purposes of the first and second elements, "the role of the trial court is to determine whether the instrument or condition, making all factual inferences in favor of the trespasser could reasonably be considered dangerous under the circumstances." *Brown v. Carvil*, 527 S.E.2d 149, 154-55 (W. Va. 1998). This determination is a question of law. However, "whether the instrument or condition is, in fact, dangerous under the circumstances is a question for jury determination." *Id.* Here, the condition certainly could reasonably be considered dangerous. A walkway with a two-foot gap over a 20–30-foot drop, with metal grating, no lights, no warning signs, and no safety railing, could certainly pose a danger of serious injury. Further, Mr. Jackson, a senior employee of one of the Defendants, acknowledged the danger himself, and that he did not act to ensure the platform was safely maintained.

Therefore, the question hinges on the open and obvious nature of the condition set forth in the third prong. That prong narrows the scope of liability to trespassers solely to hazards which would not be apparent or open and obvious to a trespasser. If a hazard is clearly visible to a trespasser, the landowner does not face liability for injuries it causes. The language of this prong, however, focuses on the knowledge and perspective of the landowner, rather than the subjective

11

experience of the injured party.   Therefore, the Plaintiff's acknowledgement that he was aware no safety railing was present and that the metal grating secured the walkway, while clearly relevant for ultimate fault apportionment, is not relevant to this analysis.   Instead, the inquiry turns on whether the Defendants would have reason to believe that trespassers would not discover it.   On this point, a genuine dispute remains.   The walkway is in an area without overhead lighting, and at night it could be difficult to see.   The Defendants had been alerted to the fact that the safety railing and no trespassing signs had been removed on multiple occasions and should have been aware that pedestrians regularly crossed the walkway.   While a reasonable jury may conclude this still constitutes a condition that is open and obvious, reasonable minds could differ.   Again, giving the Plaintiff the benefit of the inferences at this stage, the hazard could reasonably be seen as one which the Defendants had reason to believe trespassers would fail to discover, under the circumstances presented here.   Even a trespasser aware of the absence of safety railings might not be aware of the tripping hazards, the gap at the edge of the walkway, and the 20-30 feet drop to the stream below, all of which combine to create the danger.   Therefore, the question should be left for the jury, and is not subject to determination upon summary judgment.

Assuming that the third prong is met, there is certainly a genuine dispute over the fourth. If the hazard was not open and obvious, and the Defendants could not rely on a reasonable belief that all trespassers would discover it, then they had a duty to exercise reasonable care to adequately warn trespassers of the danger.   Here, it is unclear whether there were adequate signs or any other warning that would properly put trespassers on notice of the danger.   Further, as discussed above, this question of reasonable care is more properly one for jury determination and summary judgment must be denied.

C. *Special Duty of Railroads*

In Count II of the complaint, the Plaintiff asserts that the Defendants breached a duty of ordinary care in the operation of its railroad in places where the public is present.   As previously established, Mr. Saddoris was a trespasser. Therefore, to the extent that Count II asserts an independent cause of action unique to the operation of railroads, the Court finds that the Defendants are entitled to summary judgment.   The Plaintiff has identified no substantive support for an alternative standard under West Virginia law in addition or alternative to those articulated above.   Therefore, because by West Virginia law, and under the facts alleged here, Mr. Saddoris was a trespasser, any failure of the Defendants to simply exercise ordinary care cannot form the basis of premises liability.   Thus, the motion for summary judgment on Count II must be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion for Summary Judgment* (Document 19) be **DENIED** as to Counts I and III and **GRANTED** as to Count II.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    March 21, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA